Curia, per Dunkin, Cii.
The court is of opinion that this case cannot be distinguished in principle from the Ordinary vs. Hunt and Swift, 1 M’M. 381.
It was held by the Court of Appeals, in the Ordinary vs. Cole, Mss. Charleston, February, 1830, that in a suit by the distribu-tees against the administrator for partition and account, the creditors of the estate are represented by the administrator; that he is bound by law to see that they are paid; and that a court of equity would never order distribution, when it was brought to their notice by the administrator, that the fund was necessary for the payment of debts.
In the case now under adjudication, the bill was filed by the distributees within the year from the death of the intestate. In the order for the sale of the real estate, made by Chancellor Harper in May, 1830, it is said to be an amicable suit. The commissioner was directed to take an account (among other things) of “ the debts which should be rendered within the period prescribed by law, and that after making provision for the payment of the same, he report the amount remaining in the hánds of the administrator, for distribution.” The law required the creditors to render statements to the administrator; and they were accordingly rendered. Under information derived from him, the commissioner reported that $3766.67, was sufficient to discharge them, and that from the proceeds of the real estate he had retained that sum to discharge those debts. This report was made and confirmed in May, 1831. The administrator had already misapplied the proceeds of the personalty towards the satisfaction of simple contract creditors, with notice to him, at the same time, of the existence of these specialty debts. The Chancellor places his decree on the ground that “ the sum thus reserved by the *155 commissioner must be regarded as set apart to reimburse the administrator for the money advanced in the payment of simple contract debts that “ the reservation was made at the instance of the administrator, and that- as he had thus provided and applied to the bond debts a sum equal in amount to that appropriated by him in discharge of the simple contract debts, his liability was fully discharged.”
We cannot regard the transaction in this light. The fund was neither provided nor reserved by the administrator. As is 'said in the Ordinary vs. Cole, it was his duty to represent the creditors and take care that their debts were paid. The commissioner was ordered to take an account of the debts as they should be rendered to the administrator,. and to report the provision to be made for their payment prior to., a distribution. The report was made on the testimony derived from the administrator, and this sum was accordingly reserved, as the report recommended, for the payment of these debts, and not to reimburse the administrator for a misapplication, as manifest when the order was passed as it is now. The effect of sustaining the decree, would be to send the specialty creditors for payment of their demands to insolvent distributees, who have been enabled to receive their funds from the custody of the court, in consequence of the neglect of duty on the part of the administrator. The sureties to the administration bond have no cause of complaint; for, as is said by the court, in the Ordinary vs. Hunt, “ whatever was received by the creditors out of the sales of the land, diminished their liability to that extent.”
But there is another view of the testimony, which seems to place the liability of the administrator and his sureties beyond doubt. It is not pretended that the administrator disbursed any more than the fund arising from the sales of the personal estate, amounting to about $4000. But the sales of the real estate exceeded $12000. There were three distributees, the share of each amounting to $5558.21, after deducting his proportion of the amount retained for debts. But two of the distributees were indebted to the estate, J. W. Rouse $1220.61 and C. B. Rouse $6557.89. By the decretal order of the court, their share of the realty was appropriated to the extinguishment of' their debts. Raynal, the administrator, was the purchaser of the realty, to an amount exceeding ten thousand dollars; and.in settlement with the master he received from him $4055.59, pver and above his *156 distributive share, thus placing in his hands that sum as applicable to the payment of the debts of the estate, in addition to the amount reserved by the master. In other words, the amount of the personalty, actually received by him, exceeded eight thousand dollars, out of which he has disbursed less than four thousand dollars.
It is ordered, that the decree of the circuit court be reversed as to the executors of Ball and the executors of Miles, and that the master take an account of the amount due on their judgments respectively, and report thereon, and that as to the defendant, W. T. Raynal, the cause be remanded to the cirduit court.
Johnston, Ch. concurred.
Johnson, Ch.
The fact that J. W. and C. E. Rouse were indebted to the intestate, and that these debts constituted a part of the personalty, was not brought to the notice of the circuit court at the hearing. In not applying that fund to the payment of debts, the administrator was guilty of a devastavit for which his sureties are liable.